STATE OF NEBRASKA, APPELLEE, v. ARTURO BARAJAS, APPELLANT.

238 N. W. 2d 913

Filed February 26, 1976. No. 40319.

James T. Hansen, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Defendant was found guilty by a jury of murder in the second degree. He was sentenced to 25 years in the Nebraska Penal and Correctional Complex. The following errors are assigned on appeal: (1) The trial court erred in denying defendant's motion to suppress certain evidence which the State had obtained from Mexican authorities. (2) The trial court erred in admitting evidence of oral statements made by defendant prior to his trial. (3) The sentence imposed by the trial court is excessive. We affirm.

A summary of the evidence introduced by the State, absent many details, will give the background necessary for a discussion of the errors assigned. On the evening of the murder, March 1, 1975, defendant and his girl-friend, Launa, were in a bar. While there, defendant showed decedent a .22 Ruger pistol he was carrying in his pants pocket and told decedent that he and Launa were planning to use it for target practice later that evening. At decedent's request, he was allowed to ac-

company defendant and Launa when they left the bar in defendant's car. En route to the target practice area, decedent made several advances toward Launa. She told defendant who became angry, stopped the car, and ordered decedent to get out. An altercation ensued and defendant shot decedent to death with the .22 pistol.

Defendant returned to his apartment, packed his belongings, and drove to Jaurez, Mexico, where he apparently stayed in the home of his sister. On March 11, 1975, Launa flew to El Paso, Texas, to meet defendant. Defendant was arrested earlier that day by American customs officials when he tried to enter the United States from Mexico to see Launa.

Sheriff Schleve of Scotts Bluff County followed Launa to El Paso with the expectation she would lead him to defendant. Upon his arrival, he was informed by the El Paso police that defendant was already in custody, but that a search of the person and vehicle of defendant at the border had failed to produce the .22 pistol. The afternoon of March 11, 1975, Sheriff Schleve requested the Mexican authorities, through the El Paso police, to look for the .22 pistol and a .32 revolver defendant was suspected of having carried into Mexico. He gave them the address that defendant had given when he was booked into custody. At approximately 6 p.m. on March 11, 1975, Mexican authorities informed the El Paso police the guns had been found at the address given, and Sheriff Schleve obtained the weapons that same evening. The serial number on the .22 pistol matched that of the suspected murder weapon.

Defendant's first assignment of error deals with the legality of the search and seizure made by the Mexican police. The question that must be answered is whether the Fourth Amendment and its accompanying exclusionary rule can be invoked by an American citizen to protect himself from a search and seizure by foreign authorities in a foreign land.

The United States Supreme Court has held that the

protections guaranteed by the Bill of Rights do extend beyond the boundaries of the United States to protect citizens living or traveling abroad. ". . . we reject the idea that when the United States acts against citizens abroad it can do so free of the Bill of Rights. . . . When the Government reaches out to punish a citizen who is abroad, the shield which the Bill of Rights and other parts of the Constitution provided to protect his life and liberty should not be stripped away just because he happens to be in another land." Reid v. Covert, 354 U. S. 1, 77 S. Ct. 1222, 1 L. Ed. 2d 1148. The case at bar does not fall within the above language because Mexican authorities, rather than United States or State officers, carried out the challenged search and seizure in Mexico. The general rule in such a situation is that: ". . . the Fourth Amendment does not apply to arrests and searches made by Mexican officials in Mexico for violation of Mexican law, even if the persons arrested are Americans and American police officers gave information leading to the arrest and search. Decisions such as . . . Reid v. Covert . . . rest on a basis that the United States itself was acting abroad, as a result of military occupation or treaty; their reasoning, that the United States is bound by the Bill of Rights wherever it acts, is inapplicable to an action by a foreign sovereign in its own territory in enforcing its own laws, even though American officials were present and cooperated in some degree." Birdsell v. United States, 346 F. 2d 775, cert. den. 382 U. S. 963, 86 S. Ct. 449, 15 L. Ed. 2d 366. "Neither the Fourth nor the Fourteenth Amendments are directed at Mexican officials and no prophylactic purpose is served by applying an exclusionary rule (to evidence seized by Mexican police making a search in Mexico) . . . since what we do will not alter the search policies of the sovereign Nation of Mexico." Brulay v. United States, 383 F. 2d 345, cert. den. 389 U. S. 986, 88 S. Ct. 469, 19 L. Ed. 2d 478.

The courts have developed one exception to the gen-

eral rule that the Fourth Amendment is inapplicable to the activities of foreign agents: ". . . the Fourth Amendment could apply to raids by foreign officials . . . if Federal agents (or state) so substantially participated in the raids so as to convert them into joint ventures between the United States and the foreign officials." Stonehill v. United States, 405 F. 2d 738, cert. den. 395 U. S. 960, 89 S. Ct. 2102, 23 L. Ed. 2d 747. Defendant argues in the case at bar that the exclusionary rule is applicable to the weapons seized by the Mexican authorities because the "search and seizure was a joint venture by American and Mexican police." We disagree. The mere request made by Sheriff Schleve to the Mexican police that they search a residence in Jaurez, Mexico, for a weapon used in a homicide did not convert the resulting seizure made by the Mexican authorities into a joint venture. A greater activity by the American police is required before there is a joint venture which will trigger the application of the exclusionary rule. See Stonehill v. United States, *supra*. Since the search and seizure made by the Mexican authorities at Sheriff Schleve's request did not constitute a joint venture, the activities of the Mexican police did not fall within the restrictions of the Fourth Amendment and the exclusionary rule was therefore inapplicable. The trial court committed no error in refusing to suppress the two weapons found in the search.

Even if defendant had proved a joint venture existed, the evidence found would still have been admissible because defendant did not have standing to challenge the search and seizure made. Defendant did not take the stand in his suppression hearing to establish an interest in the goods seized or the place searched as he could have done without fear of self-incrimination. Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697; Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247; Poindexter v. Wolff, 403 F. Supp. 723; State v. Rice, 188 Neb. 728, 199 N. W. 2d 480. Also,

he was not on the premises at the time of the search and seizure, nor was he charged with a possessory crime. Brown v. United States, 411 U. S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208; Jones v. United States, *supra*; State v. Van Ackeren, 194 Neb. 650, 235 N. W. 2d 210. Defendant lacked standing to challenge the evidence seized by the Mexican authorities.

Defendant's second assignment of error challenges the admission of evidence of oral statements made by him to Sheriff Schleve the day after his arrest. His contention is that the statements should have been excluded because they were not voluntarily made. He argues that he was induced to make the statements by Sheriff Schleve's implied promise that he would be permitted to see Launa after questioning. The testimony of defendant and Schleve on this issue are in conflict. The District Court apparently chose to believe the testimony of Schleve. The findings of the District Court, which observed the demeanor of the witnesses and heard the oral testimony, will not be set aside unless clearly erroneous. State v. Van Ackeren, *supra*.

Defendant was questioned by Schleve the morning of March 12, 1975, the day after his arrest. He was aware that Launa was being held by the El Paso police. Schleve testified that as soon as defendant was escorted into the room for questioning: ". . . he asked if he could see Launa and I stated at that time it was not possible." Schleve also testified that defendant did not again ask to see Launa until they were "almost done" with the questioning, at which time he was permitted to see her. After talking to Launa, defendant refused to give a written statement or to answer any more questions. Previous to his interrogation, defendant had been given the Miranda warnings and had executed a written waiver.

This court has held that: "To be admissible, a confession must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor ob-

tained by any direct or implied promises, however slight, nor by the exertion of any improper influence." State v. McDonald, 187 Neb. 752, 194 N. W. 2d 183, quoting Brady v. United States, 397 U. S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747. We find that Sheriff Schleve made no "direct or implied promise" designed to induce defendant to make a statement. The only statement made to defendant concerning Launa prior to the time he was allowed to see her was made before the questioning started and was to the effect that "it was not possible" to see her. Such a simple declaration cannot be read to be a direct or implied promise by Schleve to induce defendant to make a statement. Defendant's oral statements were voluntarily made and evidence thereof was properly admitted by the trial court.

Finally, defendant asks that we reduce his sentence because it is excessive. The penalty for murder in the second degree is imprisonment "not less than ten years, or during life." § 28-402, R. R. S. 1943. The defendant has one prior conviction for the carrying of a concealed weapon for which he received a sentence of 1 year probation, which he successfully completed. The jury did not believe the defendant's claim of self-defense. The circumstances which motivated this killing might have justified some angry words. They certainly did not present any provocation which could occasion the display of a weapon, much less its use. A few hours before the slaying defendant fired a weapon into the ground near another individual. The record indicates he is violence prone. We cannot say the court abused its discretion in imposing a sentence of 25 years.

AFFIRMED.