STATE OF NEBRASKA, APPELLEE, v. JOE SCHRADER, ALSO KNOWN AS MARLYN D. SCHRADER, APPELLANT.

244 N. W. 2d 498

Filed July 28, 1976. No. 40299.

Herbert M. Sampson, III, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

The defendant was convicted of receiving property stolen from the Sloan Irrigation Company and sentenced to 2 years probation. Upon appeal he contends that the trial court erred in failing to sustain his motion to suppress and that the evidence is not sufficient to sustain the verdict and judgment.

This appeal was first heard on March 4, 1976, by a division of this court sitting under the provisions of Article V, section 2, of the Constitution of Nebraska. Following the adoption of an opinion by the division, the Judges of the Supreme Court, acting under their constitutional power to review "any decision rendered by a division of the court," directed that the matter be reargued before the full court. The cause was reargued on May 3, 1976. We affirm.

The record of the suppression hearing shows that on October 21, 1974, Sheriff Underwood of Box Butte County, Nebraska, received from one Paul Kittelman, a farmer with whom he was well acquainted, a message from a retired farmer, Frank Krejci, age 84, who lived north and west of Alliance in Sheridan County, that Krejci had found some items that were not his property in a shed on his farm and that one of the items

found was a fuel tank. Previously on October 8, 1974, the sheriff had been informed of a theft of a fuel tank from a man by the name of Fasseler. Pursuant to the message from Krejci, the sheriff, on October 21, 1974, went to the Krejci farm. Because it was in the neighboring county outside his jurisdiction, he asked Max Ibach, State Patrol criminal investigator, to accompany him. The sheriff stated that his purpose in going to the Krejci farm was to see if the tank matched the description of the one stolen from Fasseler.

At the farm the two officers met Krejci. Krejci lived in the residence on the farm. He leased the agricultural ground to another farmer and the pasture to the defendant, Joe Schrader. Underwood's testimony was that Krejci told him: ". . . there is a bunch of stuff down there in the shed that I do not know how it got there, and it don't belong to me, and I want you to get it out of here. Remove it."

Krejci's testimony confirmed that of the sheriff. Krejci testified: "I ordered him [the sheriff] out there. . . . Somebody put it in there and I did not want it there."

The sheriff and the criminal investigator, in the company of Krejci, went to the shed in question. Outside the shed was a fuel tank stand. The shed had no door, but someone (later determined to be the defendant) had placed barbed wire across the entryway in such a fashion that a person could not gain entry without removing the barbed wire. The wire, however, did not obstruct the view of one standing at the doorway. Through the opening the officers saw a fuel tank and a number of other items, including various parts of a pivot irrigation system. In compliance with Krejci's request, the officers removed all the items, including the fuel tank and stand and the irrigation system parts found in the shed. The sheriff testified that Krejci "insisted that we get the stuff off of his place. He did not want it there because he did not know who it belonged to and

had no knowledge of how it got there. And he asked us to get it all out of there."

The officers procured no warrant to seize the property and at the time it was removed they did not know or have any reason to believe, except for the fuel tank and stand, that any of the property was stolen. They had received no report of thefts of irrigation parts. The following day, however, Ibach determined that some parts had been stolen earlier from the Sloan Irrigation Company. An official of the company identified the seized parts as belonging to Sloan Irrigation Company and as having been stolen from a site where a center pivot system was being installed.

The lease arrangement between Krejci and Schrader and the relation of the shed to the lease are significant. The shed in which the property was found is one of about eight or nine buildings on the Krejci farm. This particular building was located about 60 or 70 yards southwest of the house in which Krejci resided. There had been a fence between the house and shed at one time, but only remnants of the fence remained on October 21, 1974. Cattle pastured by Schrader could move freely about the buildings including the house. Schrader sometimes kept cattle in a corral located on the premises.

Krejci testified that he "leased the grass" to Joe Schrader for $1.65 per acre. He further testified: ". . . there never was anything said about the buildings. He asked for the lease, yeah. But buildings, I do not remember anything being said about that." He stated that Schrader kept nothing in the buildings that he knew of.

Schrader testified that nothing was said about the buildings when the lease was made. He testified he paid $1.65 per acre for the grassland but nothing for the buildings. "But I got the ground leased around here." He further stated that he sometimes put fencing tools in the shed. He stated that some of the stuff taken by the officers belonged to him, but not the irrigation

parts. The cattle could enter the buildings. He testified he had placed the wire across the entrance so the cows would not go into the shed. He rented the property "for the grass."

The above evidence properly permitted the trial court to conclude: (1) The officers took the Sloan Irrigation property solely to comply with the request of the landowner and not as part of an investigation of crime. (2) The seizure of the property was not directed at the defendant Schrader because he did not, under the arrangement with Krejci, have any right to possession of the building, nor did the officers have any reason to suspect him of crime. (3) The lease between Schrader and Krejci was of the "grass" only and did not include use of the buildings for storage, that Krejci could have prohibited their use, that he had retained the right to use the buildings himself, and that he had legal access to them. (4) Schrader simply presumed permission to use the building in question.

Schrader apparently was not prosecuted for any crime in connection with the alleged theft from Fasseler and the fuel tank and stand were not received in evidence at trial.

We conclude, for reasons which we hereafter elucidate, that Schrader's rights under the Fourth Amendment were not violated in this case; further, that the policy behind the exclusionary rule, to wit, that of a sanction applied against unlawful police conduct, does not apply under the circumstances of this case; and that therefore the exclusionary rule of Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, is not applicable.

Even though under the facts Schrader had no property interest in the building from which the property was seized, he nonetheless had standing to challenge the seizure because the crime with which he is charged includes as an element thereof "possession" of the stolen property. In Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, the United States Supreme

Court held that where an element of the crime charged is possession of the property seized, " 'ownership in or right to possession of the premises' " or the interests of a " 'lessee' or 'licensee' " is not necessary to confer standing. The court there said: "(1) The same element in this prosecution which has caused a dilemma, i.e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the . . . property seized, which ordinarily is required when standing is challenged." In this case Schrader may at least raise the question of the lawfulness of the seizure. Under the facts in this case, however, he suffered no invasion of his right of privacy.

Although a seizure is usually accompanied by a search, this is not always so. See, United States v. Molkenbur, 430 F. 2d 563; United States v. McDonnell, 315 F. Supp. 152. There was, first of all, no search within the meaning of the Fourth Amendment. Access to the shed was without the curtilage and the application of the Fourth Amendment. Open fields are not within the protection of the Fourth Amendment. State v. Poulson, 194 Neb. 601, 234 N. W. 2d 214; Hester v. United States, 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898; McDowell v. United States, 383 F. 2d 599. Krejci, having retained the building had a right of access to the shed and through him so also did the officers who were there at his invitation.

When Krejci and the officers reached the shed, the officers could then, without any trespass, see the property within the shed. It was in plain view. They then entered the shed with the consent of the owner thereof. Even if we were to characterize the entry of the building as a search, it was with permission received from a person who had the right to give such consent, namely, the owner of the building who had the right of possession. "When the prosecution seeks to justify a warrantless search by proof of voluntary consent it is not limited to proof that the consent was given by the defendant, but may show that the permission to search was obtained

from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." State v. Van Ackeren, 194 Neb. 650, 235 N. W. 2d 210.

The validity of a search, of course, is not sufficient to justify an actual seizure as part of the criminal investigation unless probable cause existed. The facts here, however, show: (1) The seizure was not directed at Schrader. He was not then suspected of any crime. (2) The property was taken as an accommodation to Krejci who had exclusive right to the shed. (3) Schrader, having leased only the "grass," had no reasonable expectation of privacy in the interior of the shed. Where a seizure invades no right of privacy of the person or premises of the accused, his Fourth Amendment rights have not been violated. Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441; Alderman v. United States, 394 U. S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176.

A seizure may sometimes be justified by circumstances even though probable cause does not exist. United States v. Van Leeuwen, 397 U. S. 249, 90 S. Ct. 1029, 25 L. Ed. 2d 282. In that case there was a detention for a period of 29 hours of certain packages passing in the United States mail. The packages were detained while an investigation was made. At the end of that time investigation was completed and probable cause found. The detention of the packages while an investigation was accomplished was held not unreasonable under the Fourth Amendment, the court saying: "No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained."

The facts in this case support no inference of an ex-

pectation of privacy by Schrader in the property which was open to plain view and in a shed to which he had no legal claim of possession. Where, as here, the removal was at the request of a person who had the right to make the request and if he chose to remove the property himself, the seizure by the officers was not a Fourth Amendment violation.

We find no case precisely on point and reason by analogy. If a sheriff finds on or adjacent to a highway an apparently abandoned car, certainly, even though there is no statutory authority, he may remove the car while an investigation is made even though it may be that he could then search it no further than for the purpose of obtaining clues as to its ownership. There is in the above example a seizure, but no unreasonable invasion of privacy.

Another hypothetical analogy. Assume a sheriff has in his hands for levy an execution on a money judgment. He executes on personal property in the possession of, and which he believes to belong to, the debtor. Later, while the property is in custodia legis he discovers that it is stolen property and that there is reasonable cause to believe that the judgment debtor is the receiver of the property. Is it reasonably arguable that the evidence must be excluded because there was no warrant and no probable cause at the time the sheriff took possession?

It seems to us that under the facts in this case the policy behind the exclusionary rule is not served by excluding the evidence.

Let us briefly trace the origin and purpose of the exclusionary rule. The policy was first applied by the United States Supreme Court in Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, which involved a prosecution in the federal courts and a search and seizure made by federal officers. The court said that because the evidence was illegally obtained, the defendant had a constitutional right to have the evidence

excluded. Thirty-five years later, however, in Wolf v. Colorado, 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782, the Supreme Court held that the doctrine of Weeks v. United States, *supra,* was not applicable in state prosecutions to exclude evidence illegally received by state officers. Exclusion was not founded on a constitutional principle, but was a federal sanction against federal officers to deter unreasonable searches. In 1961, in Mapp v. Ohio, *supra,* the Supreme Court overruled Wolf v. Colorado, *supra,* and made the exclusionary rule applicable in state criminal prosecutions, holding that while its purpose was to deter illegal police action, it was nonetheless a violation of the constitutional right of the accused if the state used the evidence. Earlier in Elkins v. United States, 364 U. S. 206, 80 S. Ct. 1437, 80 S. Ct. 1453, 4 L. Ed. 2d 1669, 4 L. Ed. 2d 1688, in overruling the "silver platter" doctrine, the court emphasized that the theory of the rule was to deter police misconduct rather than to protect the rights of an individual. In United States v. Calandra, 414 U. S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561, the court called the exclusionary rule a remedial device, saying: "The purpose of the exclusionary rule is not to redress the injury to the privacy of the searched victim. . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures. . . . In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."

Realizing that the exclusionary rule "has no bearing on guilt" or "fairness of the trial" (Linkletter v. Walker, 381 U. S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601), the Supreme Court has "declined to extend the court-made exclusionary rule to cases where the deterrent purpose would not be served." Desist v. United States, 394 U. S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248. We stated recently

in State v. Barajas, 195 Neb. 502, 238 N. W. 2d 913, that the exclusionary rule has no application where its deterrent purpose is not served. That case involved a search and seizure by officers of the Nation of Mexico. We there noted: " '. . . no prophylactic purpose is served by applying an exclusionary rule . . . since what we do will not alter the search policies of the sovereign Nation of Mexico.' "

We find and hold that the deterrent purpose of the exclusionary rule would not be served by applying it under the facts of this case.

As to the defendant's second assignment, we have examined the record and find the evidence is sufficient to support the finding of guilt.

AFFIRMED.

BOSLAUGH, J., dissenting.

The controlling issue in this case, as I view the record, is whether the seizure of the property, admittedly in the defendant's possession, by the Sheriff of Box Butte County and a State Patrol criminal investigator was lawful.

The Constitution of the United States, and the Constitution of this state, protect against both unreasonable searches and unreasonable seizures. It is undisputed that the officers had no warrant and there was no probable cause for the seizure of the property at the farm in Sheridan County on October 21, 1974. The determination in the majority opinion that the seizure was lawful rests upon several factual conclusions that in my opinion are not supported by the record.

The record will not support a finding that the defendant had no right to possession or use of the shed in the Krejci pasture that contained the property seized. It is undisputed that the defendant had rented the land where the shed was located. In the absence of a reservation of the buildings, a lease of the land included the structures on the land. At the hearing on the motion to suppress, Krejci himself testified as follows: "Q And

Joe (Schrader) leases all of that land around this shed where you saw these items? A Yeah. Q And that is part of the pasture? A Yeah. Q And Joe can use the shed if he wants to? A Well, there was nothing said about it. Q But he could use it if he wants to? A Yeah."

On the other hand, the evidence is nearly conclusive that the seizure was directed at the defendant. The sheriff said he went to the Krejci farm to see if the fuel tank reported to be there matched the description of one that had been stolen in Box Butte County about 2 weeks earlier. When the sheriff arrived at the farm he learned from Krejci that the defendant had leased the pasture. The sheriff further testified that he had seen some of the same or similar property as that found in the shed at another farm rented by the defendant while trying to levy an execution against the defendant on October 11, 1974.

The officers had no information that any of the items in the shed, other than the fuel tank, might be stolen property. None of the items seized were contraband or otherwise unlawful. In order for the seizure without a warrant to be lawful the officers had to have knowledge of facts which would create a reasonable belief that the articles seized offended against the law. There had to be a nexus between the items seized and criminal behavior. Warden v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782.

I agree with Judge McCown that nothing Krejci said or did could excuse or justify the unlawful seizure.

There was no probable cause for the seizure of all items found in the shed. See Kremen v. United States, 353 U. S. 346, 77 S. Ct. 828, 1 L. Ed. 2d 876. In my opinion the motion to suppress should have been sustained as to all items except the fuel tank.

McCOWN, J., dissenting.

I join in the dissent of Boslaugh, J. While the record is somewhat confusing, it establishes without contradic-

tion that the State Patrol investigator was aware that Schrader rented the pasture on which the shed was located. The officer thought that the lease also included the building, and that the defendant Schrader had a valid claim to the shed. The State Patrol officer was the only one with territorial jurisdiction to act.

The majority opinion takes the position that officers may seize property without any probable cause for the seizure of that property simply because someone tells them to do so, and even though the person requesting the seizure claims no interest in the property and no right to dispose of it. The opinion implies that officers may seize property without probable cause simply because they are requested to do so by a stranger, and that the officers have no duty to determine what interest or ownership the stranger may have. The opinion assumes that any person who might have authority to consent to a search of premises also has the right to consent to a seizure without probable cause of any property on the premises, whatever its nature. It also assumes that such a consent cures a complete lack of probable cause, in spite of a lack of ownership or right of control in the person giving the consent.

Everyone involved in the seizure here knew that Krejci claimed no right, title, or ownership in the property seized and had no authority to dispose of it. Everyone involved proceeded on the assumption that the property to be seized had been placed in the shed by the defendant Schrader. Those facts should be enough to invalidate a warrantless seizure without probable cause and without any valid permission or consent for the seizure. On the facts here the majority opinion makes the Fourth Amendment protection against unreasonable seizures disappear without a trace in a maze of judicial interpretation. The inside of a rented shed becomes an "open field," and all expectations of privacy vanish because the only entrance to the shed is protected by barbed wire rather than a door, and the shed was lo-

cated outside "the curtilage." George III would have thoroughly approved such an interpretation, but to many Americans that concept of individual rights is as unacceptable now as it was 200 years ago.

"The Fourth Amendment protects people, not places." Katz v. United States, 389 U. S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576. The seizure here was unlawful and unreasonable. The evidence seized should have been excluded.