STATE OF NEBRASKA, APPELLEE, V. OSWALD P.
GONZALEZ, APPELLANT.

320 N.W.2d 107

Filed May 28, 1982. No. 44356.

Daniel K. Powers, for appellant.

Paul L. Douglas, Attorney General, Terry R. Schaaf and Bernard L. Packett, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is a companion case to *State v. Longa, ante* p. 356, 318 N.W.2d 733 (1982). The defendant-appellant, Oswald P. Gonzalez, was arrested on September 3, 1980, along with his codefendant, Cristobal Longa, and was charged with a violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1979), possession of a controlled substance with intent to deliver. Motions to suppress illegally obtained evidence were overruled and both defendants were tried jointly in the Douglas County District Court before a jury. Both defendants were convicted and Gonzalez was sentenced to from 1

year to 3 years in the Nebraska Penal and Correctional Complex.  We affirm.

The evidence shows that the Omaha Police Department received information from a confidential source regarding a purchase and sale of cocaine. The informant told members of the Omaha Police Department that the parties inside the house located at 4057 Frederick Street, Omaha, Nebraska, were going to purchase a large amount of cocaine and that the party leaving that residence would have with him a large quantity of money to purchase the cocaine.  The officers were told that the party would leave the residence on Frederick Street and drive to an unknown location to pick up multiple ounces of cocaine.  The informant also told police that he had seen cocaine packaged for street sale in a residence located at 422 North 34th Street, Omaha, Nebraska, and at 4057 Frederick Street as well.  The informant provided Omaha police officers with a sample which was tested and verified as cocaine.  The officers testified that they considered their informant reliable since he provided officers with cocaine which had been clinically tested as such and had provided information on prior occasions which resulted in convictions.  Further, the informant's information was verified by surveillance.

After being informed about the possible drug purchase, police officers placed the residence at 4057 Frederick Street and the residence at 422 North 34th Street under surveillance in anticipation of following individuals going to and coming from those locations, to determine the source of the suspected narcotics.  The informant told police officers that on the evening of September 3, 1980, a person by the name of Ned Reynolds would be leaving his residence at 4057 Frederick Street to make a purchase of cocaine. Later another source informed the police that Reynolds would not be making the purchase; however,

somebody would leave the Frederick Street residence to make the buy.

On the basis of this information, the police obtained search warrants for both residences during the afternoon of September 3, 1980. Surveillance was established at the Frederick Street residence in late afternoon of September 3, 1980, by members of the vice and narcotics unit.

At approximately 6 or 6:30 p.m., on September 3, 1980, police officers observed a person later identified as James Sorensen leave the Frederick Street residence. Officers followed Sorensen to a residence located at 35th and Jackson Streets. Sorensen entered 3524 Jackson Street and stayed approximately 15 to 30 minutes. Sorensen was seen leaving 3524 Jackson Street carrying what appeared to be two soft black packets. Police officers followed Sorensen to 422 North 34th Street. Shortly thereafter, Sorensen was followed to 4057 Frederick Street.

Police officers were unaware of any suspicious activity or any involvement of the Jackson Street address prior to Sorensen's arrival. Officer Katherine McKillip of the Omaha Police Department maintained surveillance of the 3524 Jackson Street residence after Sorensen's departure. Approximately 10 to 15 minutes after Sorensen had left, Officer McKillip noticed four people leave the Jackson Street residence. The four talked in the yard for several moments and then two "dark complected" men walked across the yard and got into a black Cadillac containing California license plates. The 1977 Cadillac had been parked in the vicinity of the Jackson Street address at the time Sorensen was followed there. One of the men, later identified as defendant Gonzalez, was carrying what appeared to be a black shaving kit under his shirt. He placed the article in the front seat of the car, and the other man, identified as defendant Longa, removed from the car what appeared to be a pillowcase and then

dumped its contents into the trunk. The two men entered the Cadillac and drove off. Officer McKillip was picked up by Sgt. Jack O'Donnell of the Omaha vice and narcotics unit. McKillip told O'Donnell what she had seen and the two followed the Cadillac to a convenience store located at 33rd and Cass Streets.

In the parking lot of the convenience store, Sergeant O'Donnell and Officer McKillip left their unmarked police car and approached the Cadillac. Sergeant O'Donnell testified that he identified himself as a police officer and asked the driver of the Cadillac whether they had any drugs or money in the car. The driver, Gonzalez, replied that they had money in the car. At this, Sergeant O'Donnell asked if it was more than $1,000 and Gonzalez replied yes. O'Donnell testified that at that point the two men were placed under arrest and transferred to central police headquarters. The Cadillac was towed to a police holding lot and impounded.

Shortly after defendants Gonzalez and Longa's arrest, the police served search warrants at 422 North 34th Street and 4057 Frederick Street. These searches resulted in the seizure of substances which were later clinically identified as cocaine. Police officers arrested six persons at the Frederick Street residence. Based upon the evidence seized and the arrests made at these addresses, plus activities of those persons under surveillance, warrants were issued for the search of the 1977 Cadillac as well as the residence at 3524 Jackson Street. The Jackson Street address was searched at approximately 10:30 p.m. on September 3, 1980, and resulted in the seizure of substances later clinically identified to be cocaine, a large amount of money, and the arrest of one Scott Rosenkrantz. The Cadillac, which was registered to Gonzalez, was searched at about 10:45 p.m., September 3, 1980. The search of the Cadillac resulted in the seizure of a black bank bag contain-

ing $8,708 and numerous items of identification of one Oswald P. Gonzalez. A search of the automobile trunk revealed numerous items of clothing and the normal tire-changing equipment. No controlled substances were found in the Cadillac. Based on the absence of controlled substances in the Cadillac, as well as the absence of any "toilet articles," the interest of Lt. Robert Olson was aroused in discovering where Gonzalez and Longa were staying while they were in Omaha. By questioning Scott Rosenkrantz, it was discovered that Gonzalez and Longa had been staying at the New Tower Motel. A search warrant was prepared for that location. An attempt to locate the defendant's room at the New Tower proved unsuccessful and gave rise to an investigation of local motels in the area in an attempt to find where defendants Gonzalez and Longa were staying. Shortly after 12 a.m., September 4, 1980, Officer Thomas Gorgen found a room registration in the name of the defendants at the Thrifty Scot Motel. Also listed on the room sign-in sheet was the 1977 Cadillac with the California license number. The previous affidavit for the search of the New Tower Motel was altered at the direction of Lieutenant Olson by inserting Thrifty Scot wherever New Tower appeared. That affidavit, in addition to the affidavits set forth for the previous warrants, were attached to the request for a search warrant of the motel room. On the basis of all that had transpired on September 3, 1980, a warrant was issued for the search of room 407 at the Thrifty Scot Motel. The search was conducted at approximately 1:30 or 2 a.m. on September 4, 1980, and resulted in the seizure of certain notebooks and papers, $3,800 in cash, a suitcase containing cocaine, a scale, and other assorted items. Police also found a package of cocaine rolled up in a towel. All the substances seized from the motel room, 4057 Frederick Street, 422 North 34th Street, and 3524 Jackson Street clini-

cally tested as cocaine. These findings resulted in the filing of an information against defendant Gonzalez and his companion Longa.

Gonzalez assigns the following errors: (1) The District Court erred in overruling his motion to suppress illegally obtained evidence; (2) The District Court erred in admitting into evidence statements obtained when the defendant was in custody without a showing that he had been advised of his right to remain silent; (3) The District Court erred in refusing to grant the defendant a hearing on the veracity of the supporting affidavit of the search warrant used to search room 407 of the Thrifty Scot Motel; and (4) The District Court erred in commenting on the evidence incorrectly during final argument in a way which was prejudicial to the defendant.

The issue of when the arrest occurred was fully discussed in *State v. Longa, supra*, and for the same reasons set forth therein we conclude here as well that the activities of the officers prior to the actual arrest of Gonzalez and Longa were based upon a suspicion of criminal activity found within the fourth amendment guidelines and are permissible under Neb. Rev. Stat. § 29-829 (Reissue 1979).

Gonzalez moved to suppress all evidence obtained as a result of his unlawful arrest, all items obtained "as a result of the search of the Thrifty Scott Motel, Room #407," all items obtained "as a result of a search of his 1977 Cadillac," and any items seized or "derived from a search of 3524 Jackson." Again, with respect to Gonzalez' assignments (1) and (2), we reiterate the conclusion reached in *State v. Longa, supra,* that the evidence seized from the Cadillac, the Jackson Street residence, and the Thrifty Scot Motel room was not discovered as the result of an "exploitation" of the arrest claimed to have been illegal, but resulted instead from independent sources. The evidence reveals that the officers were informed by the defendant that he had more than

$1,000 in cash in the automobile prior to his arrest. Defendant's second assignment of error is without merit.

Turning to defendant's first and third assignments of error challenging the search of the Cadillac, the Jackson Street duplex, and the Thrifty Scot Motel room, we conclude that Gonzalez did not have standing to attack the search of the Jackson Street duplex. See, *State v. Vicars,* 207 Neb. 325, 299 N.W.2d 421 (1980); *State v. Ohler,* 208 Neb. 742, 305 N.W.2d 637 (1981); *State v. Kemper,* 209 Neb. 376, 307 N.W.2d 820 (1981); *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Rakas v. Illinois,* 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). Those cases reflect the holdings of this court and the U.S. Supreme Court that the capacity to claim protection of the fourth amendment as to unreasonable searches and seizures depends not upon the property right in the invaded place but upon whether the person who claims the protection of the fourth amendment has a legitimate expectation of privacy in the invaded place.

There was no showing whether the defendant was, in fact, ever residing at the Jackson Street address, had a key for entry to that address, rented or owned the property, exercised any type of control over the property, or kept any clothing or personal belongings at the property. On this basis we conclude that Gonzalez did not have a legitimate expectation of privacy in the Jackson Street residence.

The discussion of probable cause for the issuance of the search warrants for the Cadillac, the Jackson Street duplex, and the Thrifty Scot Motel were fully discussed in *State v. Longa, supra.* On the basis of the conclusions reached therein, defendant's first and third assignments of error are without merit.

In his last assignment of error, defendant contends that the District Court erred in commenting on the

evidence incorrectly during final argument in a way which was prejudicial to the defendant. The court stated: "While you are on that subject and while you are stopped here in your argument, I will tell you, Mr. Riley, that Officer O'Donnell did testify that he searched 3524 Jackson Street and they recovered cocaine, so it is in evidence." Defendant contends that this statement was not a correct statement of the evidence because Officer O'Donnell had testified: "Q. Were controlled substances or suspected controlled substances recovered at that location? A. Yes. Q. And the nature of which was? A. Cocaine." Defendant's contention that the court's statement and Officer O'Donnell's actual testimony were factually incorrect is without merit. There is no prejudice to the defendant by these statements.

The judgment of the District Court is hereby affirmed.

AFFIRMED.