STATE OF NEBRASKA, APPELLEE, V. RAYMOND F. BADAMI,
APPELLANT.
453 N.W.2d 746

Filed April 20, 1990.　　No. 89-364.

Barbara Thielen, of Taylor, Fabian, Thielen & Thielen, for appellant.

Robert M. Spire, Attorney General, and Gary P. Bucchino, Omaha City Prosecutor, and J. Michael Tesar for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant has appealed from the order of the district court affirming his conviction by the county court of operating a motor vehicle while under the influence of a drug, in violation of Neb. Rev. Stat. § 39-669.07 (Supp. 1987), a Class W misdemeanor.

Defendant assigns seven errors, summarized as follows: (1) the failure of the trial court to grant his pretrial motion to suppress certain evidence; (2), (3), (4), and (5) the failure of the court to sustain various objections to the admission of evidence; (6) the failure of the court to sustain defendant's motion to dismiss; and (7) the insufficiency of the evidence to sustain defendant's conviction.

On July 7, 1988, at about 5 p.m., Officer Butler of the Omaha Police Division observed a vehicle being driven in a reckless manner. The vehicle was bouncing off the median in the center of the street. The officer followed and further observed the vehicle bounce off the median several more times, and noticed the driver was either fanning himself or slapping himself in the face.

The officer then turned on his red lights and attempted to pull over the vehicle which was being driven by the defendant. After hitting the curb of the median one more time, defendant turned and stopped his vehicle.

When the defendant had stopped, the officer approached the vehicle and spoke with the defendant. There was evidence that the officer asked defendant what was wrong, and the defendant

stated he was very tired. Officer Butler noted the defendant was very fidgety and glassy eyed and spoke in a rapid manner. Officer Jacobson, who arrived on the scene as a backup, described defendant by stating that

> he had a very disheveled appearance. His hair was a mess. His eyes were glazed and didn't appear to be able to focus on anything. His pupils were very pinpoint, very small. He was overly responsive to requests that we asked him to do. A lot of hand gestures, a lot of moving around with his body, that sort of thing . . . .

The defendant was asked to perform four field sobriety tests in the presence of both officers. According to their testimony, defendant clearly failed each one. He became confused in reciting the alphabet; he was wobbly on the one-foot balancing test and could not continue the count to 30 as requested; he was unable to successfully count backward from 100 to 80 in that upon reaching 90, he started counting back to 100; and he was unable to do the finger-to-nose test. The defendant was given a breath test which was negative for alcohol. Neither Officer Butler nor Officer Jacobson smelled alcohol on the defendant or believed the defendant was under the influence of alcohol. However, based on their several years of experience as police officers in dealing with persons under the influence of drugs, they both gave as their opinions that defendant was under the influence of some drug which they were unable to specify.

The officers placed the defendant under arrest for suspicion of driving while under the influence of alcohol or a drug and proceeded to search him. In the course of their search the officers discovered in the defendant's pockets an unmarked medicine bottle containing some pills, a syringe, and a large quantity of cash.

While being placed in the police cruiser, defendant made a comment to the effect that maybe now he could get some help "for the problem." Officer Jacobson testified that after the arrest the defendant volunteered a statement, which the officer wrote down, that he, the defendant, had a drug problem and "maybe between this and my daughter I can quit."

The foregoing information has been gleaned from the testimony adduced at trial as well as at the hearing on the

motion to suppress the evidence obtained as a part of the search. The defendant, who only testified at the suppression hearing, disputed the fact that he hit the median strip more than once, and he also claimed that he successfully passed the various field sobriety tests.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989).

In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *Id.*

The key to the resolution of the suppression issue is whether the officers had probable cause to arrest the defendant without a warrant. In *State v. Roach,* 234 Neb. 620, 624-25, 452 N.W.2d 262, 266 (1990), this court stated:

> When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). See, also, *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989).
>
> Probable cause exists where facts and circumstances within an officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant one of reasonable caution to believe that an offense has been or is being committed. If the facts available to the officer at the time of the arrest would warrant one of reasonable caution in the belief the action was appropriate, then probable cause exists. Thus, the key to a lawful arrest without a warrant is reasonable or probable cause to believe that a person has committed a crime. *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987).
>
> Probable cause for a warrantless arrest exists if,

" 'under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime.' " *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir. 1986); *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

The validity of a search incident to a lawful warrantless arrest depends on the legality of the arrest itself. It is not necessary that an actual formal arrest occur before a search is undertaken as long as probable cause for arrest does exist prior to the search. The constitutional issue regarding a reasonable search as an incident to arrest depends upon the presence or absence of probable cause for that arrest, that is, whether immediately before the search an officer has probable cause to believe that the person to be searched has committed a crime. *State v. Blakely, supra.*

Whether the arrest was made before the search, as testified to by the officers, or the arrest immediately followed the search, as claimed by the defendant, would be of no consequence.

" '[W]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than visa [sic] versa [as long as] . . . the fruits of the search of petitioner's person were, of course, not necessary to support probable cause to arrest petitioner.' "

234 Neb. at 626, 452 N.W.2d at 267.

The totality of the facts and circumstances known to the arresting officers includes the observation of defendant driving his vehicle in a dangerous and reckless manner, a clear failure to perform basic sobriety testing of both his physical and mental alertness, the aforementioned descriptions of his conduct and behavior, and the absence of evidence that defendant had consumed any great quantity of alcohol, all of which support the prudent belief that defendant had committed the crime of driving under the influence of a drug.

There is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial.

*Morrison v. United States*, 491 F.2d 344 (8th Cir. 1974). The claim that probable cause to arrest was lacking is without merit. The scope of the search incident to arrest is not challenged. Consequently, the trial court was correct in not excluding any evidence gained from the valid arrest and search.

Approximately 30 days after the motion to suppress was overruled, a bench trial was had. The two officers who had testified at the suppression hearing gave substantially similar testimony at the trial. In addition, the parties stipulated that the bottle of pills found on the defendant as a result of the search contained a drug known as Dilaudid.

The State then called Bill Ihm, a chemist, to testify. After eliciting background information as to his professional and educational experience, he was asked what Dilaudid is. Without objection, the witness responded that the drug is a Schedule II narcotic, a synthetic narcotic with no extract from opium, and that the drug is a central nervous system depressant.

The State then produced photostatic copies of some pages of a pharmaceutical guide called the Physicians' Desk Reference (PDR), which were marked as exhibit 3. Exhibit 3 is not contained in the bill of exceptions, but described during the questioning of Ihm were copies of pages 1098 and 1099 of the 1988 PDR, which are said to refer to Dilaudid.

In response to questioning, and over objection, Ihm testified by stating what the PDR apparently said about Dilaudid and the use of heavy equipment and driving. In addition, he answered that according to the PDR the defects on the central nervous system caused by Dilaudid were sedation, drowsiness, mental clouding, impairment of mental and physical performance, and anxiety.

Upon further questioning, Ihm said his testimony was based not only on what the PDR said about Dilaudid, but also on his experience with reference materials over the period of his professional career. In this regard the following question and answer appear in the record: "THE COURT: And you've indicated, based on your own personal background and experience over the course of your professional career, as to the effects as you know them to be in regard to narcotics. Is that

correct? [Ihm]: True."

The trial court allowed all of the witness' testimony over a hearsay objection, stating that "it does fall under the exception of the hearsay rule as to find either by business exceptions or document exceptions, or by the catch-all exception . . . ."

The State then rested, and the defendant moved to dismiss because of insufficiency of the evidence. The record discloses no ruling on the motion. The defendant chose not to put on any evidence. The court found defendant guilty.

For the most part, defendant's second, third, fourth, and fifth assignments of error, as worded, request this court to review every evidential objection raised by defendant which the trial court overruled. However, most of those alleged errors are not discussed. This court will not consider assignments of error which are not discussed in the brief. *State v. Broadstone*, 233 Neb. 595, 447 N.W.2d 30 (1989).

The only evidential rulings discussed in the brief are the denial of the motion to suppress discussed earlier, the failure to sustain foundational objections raised against the testimony of Officers Butler and Jacobson on whether the defendant was under the influence of a drug, and whether exhibit 3 and the testimony of the chemist derived therefrom constitute inadmissible hearsay.

Both police officers testified as to their experience in dealing with persons under the influence of drugs. They gave as their expert opinions, based on the actions of the defendant and the absence of any evidence of alcohol usage, that the defendant was under the influence of a drug.

Defendant's objection seems to be that the officers could not testify because they did not identify the drug involved. This argument has no validity. The officers were properly qualified as experts, and their opinions were based upon a sufficient factual basis. It is obvious that the defendant's driving ability was severely impaired so as to indicate that he was under the influence of something. The absence of evidence of alcohol usage pretty well eliminates that as a cause of defendant's activities. Defendant's claim that he was tired hardly explains the driving and behavior he displayed. With the situation in which the officers found themselves, they would have been

derelict in their duty not to have arrested defendant and taken him off the road. The officers had reasonable grounds to place defendant under arrest, and therefore the seizure of the pill bottle and syringe was lawful.

The arrest being lawful, the evidence of the possession of Dilaudid and drug paraphernalia by the defendant and his voluntary statement that he had a drug problem, although evidence of a circumstantial nature, provided a sufficient factual basis to support the officers' expert opinions and the finding of guilt made by the trial court.

As previously stated, exhibit 3, the PDR pages, was not found in the record. Whether the witness Ihm's testimony was based in part on what he had read in that work is of no consequence. Ihm testified without objection and without reference to the exhibit that he knew that Dilaudid was a scheduled drug, a narcotic, and a central nervous system depressant. The failure of the trial court to sustain defendant's objection to the reception of exhibit 3 into evidence would, at most, constitute harmless error. It is well established that a conviction will not be turned aside in the absence of a showing that an error prejudiced the defendant. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990).

The trial court heard the testimony of the officers regarding the driving antics and other actions of the defendant, the admission of the defendant that he had a drug problem, and the seizure of the drug Dilaudid and drug paraphernalia from the defendant, as well as the testimony of witness Ihm that Dilaudid is a central nervous system depressant. Although some of this evidence is circumstantial in nature, it is sufficient to support a finding of guilty beyond a reasonable doubt.

A criminal conviction will be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Carter*, 234 Neb. 378, 451 N.W.2d 271 (1990).

A judgment of conviction will not be reversed on appeal unless the evidence supporting the conviction is so lacking in probative force that it is insufficient as a matter of law. *State v. Wokoma*, 233 Neb. 351, 445 N.W.2d 608 (1989); *State v. Wyatt*, 234 Neb. 349, 451 N.W.2d 84 (1990).

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, determine the plausibility of explanations, or weigh the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Wokoma, supra.*

The State is not required to disprove every hypothesis but that of guilt. *State v. Wokoma, supra.*

One accused of a crime may be convicted on the basis of circumstantial evidence if, viewed as a whole, the evidence establishes the guilt of the defendant beyond a reasonable doubt. *State v. Bodfield,* 228 Neb. 205, 421 N.W.2d 794 (1988); *State v. Jacobs,* 226 Neb. 184, 410 N.W.2d 468 (1987).

The judgment of the district court is affirmed.

AFFIRMED.