STATE OF NEBRASKA, APPELLEE, V. STEVEN A. CORTIS, APPELLANT.
465 N.W.2d 132

Filed January 25, 1991.   Nos. 89-660, 89-661.

98

Robert B. Deck for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Steven A. Cortis appeals his bench trial convictions in the

Dakota County District Court for possession with intent to manufacture a controlled substance and for conspiracy. We affirm.

Cortis' four assignments of error combine to assert that the trial court erred in (1) failing to suppress certain evidence obtained as a result of improper search and arrest warrants, (2) limiting impeachment of a witness, and (3) finding that the evidence was sufficient to convict the defendant of the offenses charged.

An unidentified person telephoned the Dakota County sheriff's office on May 21, 1988, and spoke with Doug Johnson, a Nebraska State Patrol narcotics investigator. The informant, later determined to be Colene Barker, informed Johnson that she had knowledge that someone was growing marijuana in Dakota County, that this individual was not acting alone, and that the informant was concerned about the individual "getting into trouble." Barker had never previously acted as a confidential informant.

On May 23, 1988, Barker met with the Dakota County Attorney regarding a problem she was having with neighbors. At that time, she informed the county attorney that one Nancy Brown was growing marijuana. On that same day, Barker also spoke to Johnson, at the South Sioux City Police Department. Barker told Johnson that Brown, who resided in Homer, Nebraska, in a rented house, had several marijuana plants growing in her home and that Brown's boyfriend, Steve, was the "brains" behind the operation. Barker was a coworker and friend of Brown's. It was later discovered that Steve Cortis, the defendant, was Brown's boyfriend. Barker provided Johnson with a map of Brown's residence and information on the location where the dried marijuana was being stored and how it was being stored. Johnson did not investigate Barker's background and had no further contact with her prior to serving the search warrant on the Brown residence.

Based upon the information provided by Barker and independent knowledge possessed by Johnson, an affidavit and complaint for a search warrant was sworn to before a clerk magistrate. A search warrant for Brown's home was obtained and executed at 2:45 p.m. on May 23, 1988.

At the time of the search, Brown was home alone. A strong odor of marijuana pervaded the house. In a room adjacent to Brown's bedroom, law enforcement officers discovered plastic buckets containing 12 growing marijuana plants arranged beneath a grow light, a timing device to operate the grow light, chemicals used for growing plants, a fan, an incubator for starting immature marijuana plants, and a sprayer. The windows in the room in which the growing marijuana plants were discovered were covered by blankets. In another room, officers discovered processed marijuana in a bucket and cut marijuana in plastic and burlap bags. Testing performed at the Nebraska State Patrol Criminalistics Laboratory verified that the evidence seized was, in fact, marijuana. Officers also discovered a book entitled "Cannabis Alchemy" in Brown's bedroom.

Two spiral notebooks were also seized from Brown's dwelling. When Brown was not at home, the notebooks were kept on the porch for Brown and visitors to leave messages for one another. Several incriminating messages in the notebooks were signed by either "Nancy" or "Steve."

Johnson believed that the "Steve" to whom Barker referred was a Steve R. He was thought to be involved in the use and sale of controlled substances. The affidavit in support of the search warrant reflects Johnson's belief that Steve R. was involved in growing marijuana with Brown. When Brown was questioned at her home regarding Steve R., she informed Johnson that the only "Steve" she knew was Steve Cortis, her boyfriend. At that time, Cortis lived on a farm near Walthill, Nebraska.

Thereafter, the Dakota County Attorney swore out an affidavit in support of a warrant for Cortis' arrest, which was granted. Cortis was arrested, and his *Miranda* rights were explained to him. No issue has been raised in this court regarding his *Miranda* rights.

By separate informations, the defendant was charged with possession with intent to manufacture a controlled substance (marijuana), in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988), and with conspiracy to commit the foregoing, in violation of Neb. Rev. Stat. § 28-202 (Reissue 1989), both of which are Class III felonies, §§ 28-416(2)(b) and

28-202(4). A Class III felony is punishable by not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985). Cortis pled not guilty to each charge. The cases were consolidated for trial, and a jury trial was waived.

Cortis filed separate motions to suppress (1) evidence seized pursuant to the search warrant executed at Brown's residence, (2) statements made by Cortis after his arrest, and (3) physical identifying characteristics obtained as a result of his arrest. The district court overruled all three motions. The defendant was found guilty on both counts and sentenced to a term of imprisonment of 6 to 10 years on each charge, the sentences to run concurrently.

## I. SEARCH WARRANT

As stated, Cortis' motion to suppress the evidence seized pursuant to the search of Brown's home was overruled. At trial, Cortis unsuccessfully renewed his objections to the admission into evidence of a videotape of the search, photographs of the evidence seized in Brown's house, the book entitled "Cannabis Alchemy," and the two notebooks containing correspondence between Brown and Cortis. Thus, Cortis has preserved any alleged error in regard to these items for appeal. See *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990) (in a criminal trial, after a pretrial hearing and order overruling a defendant's motion to suppress evidence, the defendant must object at trial to admission of the evidence which was the subject of the suppression motion in order to preserve the question for appeal).

Barker, the confidential informant, had previously been twice convicted of forgeries which occurred 8 or 9 years prior to trial and had sought counseling in 1976 when her mother died and again in 1983 after she lost three children in a fire. She testified that on occasion when she visited Brown's residence, she smoked marijuana.

Cortis argues that Barker was not a reliable informant. He asserts that Johnson should have made a simple check into Barker's background to determine if she had a criminal or psychiatric history and if she was under the influence of drugs

or alcohol at the time of her observations.

The parties stipulated that the searched premises were leased solely to Brown beginning on February 1, 1988. The question necessarily arises as to whether Cortis has standing to attack the search of Brown's home.

In *Minnesota v. Olson*, _____ U.S. _____, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990), the police suspected Robert Olson of driving a getaway car involved in a robbery-murder. Olson, who resided elsewhere, spent the night of the robbery on a floor of a duplex with the occupants' permission. He had a change of clothes with him there. Olson was never given a key to the duplex. On the day following the robbery-murder, without seeking permission and with weapons drawn, officers entered the duplex at 3 p.m., found Olson in a closet, and arrested him. Olson later sought to suppress inculpatory statements made to the police after his arrest. The threshold issue was whether Olson had standing to attack a warrantless entry into the duplex where he was an overnight guest to effect his arrest. In analyzing the issue, the Court explained:

> Since the decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has been the law that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). A subjective expectation of privacy is legitimate if it is " 'one that society is prepared to recognize as "reasonable," ' " *id.*, at 143-144, n. 12, 99 S.Ct., at 430, n. 12, quoting *Katz, supra*, at 361, 88 S.Ct., at 516 (Harlan, J., concurring).

*Olson, supra* at 110 S. Ct. at 1687. See, also, *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990) (standing to assert fourth amendment violation premised on person claiming the protection of the amendment having a legitimate expectation of privacy in the invaded place); *State v. Harms*, 233 Neb. 882, 449 N.W.2d 1 (1989).

Applying the foregoing test, the *Olson* Court held, "We need go no further than to conclude, as we do, that Olson's status as

an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson, supra* at 110 S. Ct. at 1688.

Brown and Cortis both testified that Cortis stayed overnight "[a] couple times" at Brown's house in Homer. They further testified that at the time of Brown's arrest, they had not seen each other in 2 or 3 weeks.

In significant contrast to *Olson, supra,* Cortis was not a current overnight guest at the time of the police intrusion. Indeed, the two had not seen each other for 2 to 3 weeks preceding the search of Brown's house. On that basis, it cannot be said that Cortis had an expectation of privacy in Brown's home which society is prepared to recognize as reasonable. Any other conclusion would result in an overnight guest's having a permanently protected fourth amendment interest in a place in which he or she once stayed, no matter how remote in time.

It could be argued that despite the fact that Cortis was not an overnight guest at Brown's at the time of the search, he nevertheless had a legitimate expectation of privacy in Brown's residence. See, generally, 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3(c) (West 1987).

In *Harms, supra,* Michael Harms challenged a seizure of a notebook from a portable shed placed on Dennis Jurgens' property. We began our analysis there by noting that "the capacity to claim the protection of the fourth amendment as to unreasonable searches and seizures depends not upon a property right in the invaded place, but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place." *Harms, supra* at 887, 449 N.W.2d at 5. This court further asserted that ownership and possessory rights in "places" are still important in determining whether a particular person has a legitimate expectation of privacy in a particular place.

A number of factors not present here led this court to conclude that the defendant in *Harms, supra,* had standing to assert a fourth amendment challenge to the search of the shed. The shed was built by Jurgens and Harms. Both of them stored tools and personal property in the shed. The shed was kept locked, and only Harms and Jurgens had keys to the lock.

In *State v. Gonzalez*, 211 Neb. 697, 320 N.W.2d 107 (1982), *cert. denied* 459 U.S. 1039, 103 S. Ct. 454, 74 L. Ed. 2d 607, the Omaha police, on the basis of confidential, reliable information, placed a residence located on Frederick Street under surveillance. Police officers followed a man leaving that residence to a duplex located on Jackson Street. A short time after the man left the duplex, the police observed the defendant and three other people leave the Jackson Street residence. The defendant and another individual were arrested a short time later after departing the scene in a Cadillac. A large amount of money was seized from the automobile. Police further discovered cocaine and money in the Jackson Street duplex. The defendant moved to suppress any items seized or derived from a search of that residence.

This court concluded that the defendant did not have standing to question the search of the duplex. We reasoned, "There was no showing whether the defendant was, in fact, ever residing at the Jackson Street address, had a key for entry to that address, rented or owned the property, exercised any type of control over the property, or kept any clothing or personal belongings at the property." *Id.* at 703, 320 N.W.2d at 111.

As stated in Cortis' case, the premises were rented solely to Brown. During the time Brown lived at her house in Homer, the defendant resided on a farm near Walthill, Nebraska. Brown testified that Cortis did not have a key to her house and that she did not give him a key or hide one for his access. Cortis testified that he occasionally had access to Brown's home when she left the door unlocked.

While the record reflects that Cortis took to Brown's home a variety of garden plants for her to tend, Brown testified that these plants were kept on an enclosed porch. The porch was locked on only one or two occasions. There was no evidence that Cortis kept any clothing or personal belongings at Brown's house. Brown testified that while she resided in Homer, there were times she did not see Cortis for weeks.

Moreover, Cortis never asserted an interest in the property seized. Whether an accused has asserted an interest in the property seized is a factor in determining whether he or she has standing to challenge a search under which that property has

been seized. *State v. Barajas*, 195 Neb. 502, 238 N.W.2d 913 (1976); *State v. Rice*, 188 Neb. 728, 199 N.W.2d 480 (1972), *cert. denied* 430 U.S. 947, 97 S. Ct. 1584, 51 L. Ed. 2d 795 (1977). See, also, *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (holding that petitioners did not have standing because they did not assert either a property or possessory interest in the place searched nor an interest in the property seized). Any argument that by asserting an interest in the property seized, Cortis would be faced with the dilemma that his admission could be used against him at trial has been foreclosed. At a suppression hearing, a defendant may testify as to such an interest as to give him standing, and his or her testimony cannot be used against him at trial. *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly wrong. *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990). See, also, *U.S. v. Rubio-Rivera*, 917 F.2d 1271 (10th Cir. 1990) (controverted facts under standing issue reviewed under clearly wrong standard); *U.S. v. McBean*, 861 F.2d 1570 (11th Cir. 1988) (trial court's finding that a defendant has a subjective expectation of privacy may not be reversed unless clearly erroneous). While the trial court did not set forth its findings of fact in overruling Cortis' motion to suppress, it cannot be said that the court was clearly wrong in overruling the motion. Cortis never resided in Brown's home, which was rented solely to her; he did not have a house key or access to one; he did not exercise control over the premises; other than the garden plants which were kept on an unlocked porch, Cortis had no personal property at the home; and he claimed no interest in the items seized.

Cortis was charged with possession with intent to manufacture a controlled substance. This court is aware that it has previously held that where possession is an element of the offense charged, the one charged has automatic standing to contest the search and seizure. See *State v. Schrader*, 196 Neb. 632, 244 N.W.2d 498 (1976). *Schrader, supra*, relies on *Jones v.*

*United States*, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), for that holding. Since *Jones, supra*, was overruled in *United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), it follows that the holding in *Schrader, supra*, that one charged has automatic standing to contest a search and seizure where an element of the crime charged is possession, is no longer controlling and is hereby overruled.

Because Cortis lacked standing to attack the search of Brown's home, we need not reach the question of the sufficiency of the search warrant. This assignment of error is without merit.

## II. ARREST WARRANT

In an affidavit in support of Cortis' arrest warrant, the Dakota County Attorney stated in paragraph 3 that "Defendant, Nancy K. Brown upon being interrogated indicated that she had been cooperating with another individual in growing said marijuana and processing said marijuana and identified said individual as Steve Cortis."

Johnson stated that he alone interrogated Brown and that Brown never told him that Cortis was involved in growing marijuana. Brown testified that she did not at any time inform law enforcement officers that Cortis was involved in growing marijuana with her.

Cortis contends that without the allegedly false statement in paragraph 3 of the affidavit, an arrest warrant would never have been issued. If he had not been arrested, Cortis maintains, the State would have been unable to obtain his fingerprints and handwriting exemplar, which were used to his detriment at trial.

Before proceeding to an analysis of this issue, we note that while Cortis filed a pretrial motion to suppress statements made to law enforcement officers after his arrest on the basis that he was unconstitutionally arrested, he has not pursued this contention on appeal. Although we need not reach the issue regarding Cortis' postarrest statements, see *State v. Thomas*, 236 Neb. 568, 462 N.W.2d 618 (1990) (Supreme Court will consider only those errors assigned and discussed), Cortis' assignment of error respecting his fingerprints and handwriting samples necessarily raises the question of the constitutionality

of his arrest.

To invalidate an arrest warrant on the grounds that the supporting affidavit was false, the defendant bears the burden of showing that the affiant made a deliberate falsehood or acted with a reckless disregard for the truth. *State v. Cullen*, 231 Neb. 57, 434 N.W.2d 546 (1989); *State v. Williams*, 214 Neb. 923, 336 N.W.2d 605 (1983). Even if the foregoing is met, the arrest may be upheld if after the offending material is disregarded, there remains sufficient content in the affidavit to support a finding of probable cause. *Cullen, supra*; *Williams, supra*. It is assumed arguendo, for purposes of analysis, that paragraph 3 contains deliberate falsehoods or statements made with a reckless disregard for the truth.

Excluding allegedly deliberate falsehoods and statements made with a reckless disregard for the truth, the arrest warrant affidavit, dated May 26, 1988, discloses in substance that a search warrant was obtained for Brown's home; that the warrant was based on confidential information that the home was being used to grow and manufacture marijuana; that a search of Brown's home in Homer, Nebraska, on May 23, 1988, yielded 3 large containers of processed marijuana and 12 plastic buckets in which marijuana plants were growing; and that information obtained at the scene indicated that Brown and Cortis had cooperatively raised and processed the marijuana together in the home and had been doing so for some time.

In determining whether probable cause exists for the issuance of an arrest warrant, the issuing magistrate is to make a commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity and basis of knowledge of the persons supplying the hearsay information, there is a fair probability that the defendant was implicated in the crime. *Williams, supra*. "A magistrate's determination of probable cause should be paid great deference by reviewing courts, and warrants should not be invalidated by interpreting the supporting affidavit in a hypertechnical, rather than a commonsense, manner." *Cullen, supra* at 60, 434 N.W.2d at 549. "The duty of the Supreme Court in determining whether probable cause to issue a search warrant exists is only to ensure that the magistrate

had a substantial basis for concluding that such existed." *Id.*

Disregarding the allegedly offending statements in the affidavit in support of Cortis' arrest warrant, we conclude that the remaining material in the affidavit sufficiently demonstrates a fair probability that Cortis was implicated in the marijuana growing operation. The magistrate had a substantial basis for finding that there was probable cause to arrest Cortis.

## III. IMPEACHMENT

On cross-examination, Barker testified that on occasion she smoked marijuana while visiting Brown's home. She further testified that she was never under the influence of any other drug when she visited Brown's house. The court sustained the State's objection when Cortis' attorney asked Brown's brother, "Did Colene Barker ever take any other type of drugs?" Cortis argues that because Barker's credibility was crucial, the district court committed prejudicial error by not allowing him to impeach her on this point.

Cortis never made an offer of proof as to what Brown's brother would have testified if so permitted. Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked. *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987); Neb. Rev. Stat. § 27-103 (Reissue 1989). Even if it is assumed that the error was preserved for appeal on the basis that the substance of the evidence to be offered by the testimony was apparent from the context in which the question was asked, this assignment of error is without merit.

As this court declared in *McCune v. Neitzel*, 235 Neb. 754, 760, 457 N.W.2d 803, 808-09 (1990): "A witness may not be impeached by producing extrinsic evidence of collateral facts to contradict the first witness' assertions about those facts. A witness' prior inconsistent statement may be used to impeach the witness *only* on matters relevant to and otherwise admissible on some issue in the case tried." See, also, Neb. Rev. Stat. § 27-608(2) (Reissue 1989) (specific instances of the conduct of

a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Neb. Rev. Stat. § 27-609 (Reissue 1989), may not be proved by extrinsic evidence). The fact that Barker may have used drugs other than marijuana was irrelevant to whether Cortis was guilty of the offenses charged. Her drug use was not a matter which Cortis could show absent her impeachment. The district court did not abuse its discretion in excluding this evidence. See *State v. Baltimore,* 236 Neb. 736, 463 N.W.2d 808 (1990) (a trial court's ruling on the relevancy of evidence will not be disturbed on appeal unless there has been an abuse of discretion).

## IV. SUFFICIENCY OF THE EVIDENCE

Section 28-416(1) provides in relevant part that "it shall be unlawful for any person knowingly or intentionally: (a) To . . . possess with intent to manufacture, distribute, deliver, or dispense a controlled substance . . . ." Marijuana is a controlled substance. See Neb. Rev. Stat. §§ 28-404 and 28-405 (Reissue 1989). "A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony . . . [h]e or another person with whom he conspired commits an overt act in pursuance of a conspiracy." § 28-202. In his final assignment of error, Cortis argues that the evidence was insufficient to convict him of either charge.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, determine the plausibility of explanations, or weigh the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them.

*State v. Badami,* 235 Neb. 118, 126, 453 N.W.2d 746, 751 (1990).

"On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as

unsupported by evidence beyond a reasonable doubt."
*State v. Zitterkopf*, 236 Neb. 743, 747, 463 N.W.2d 616, 620 (1990). One accused of a crime may be convicted on the basis of circumstantial evidence if, viewed as a whole, the evidence establishes the guilt of the defendant beyond a reasonable doubt. *Badami, supra.*

Barker testified that she had been in Brown's residence in Homer many times and had seen Cortis in the growing room on at least five occasions. She further testified that she observed Cortis caring for and spraying the marijuana plants.

Barker related that on one occasion, Cortis became upset with Brown when she forgot to lock the door of the growing room and that a key to the padlock for the growing room door was kept on Brown's dresser. She testified that a disagreement had arisen between Brown and Cortis regarding marijuana cuttings, that Brown was worried that Cortis would seize all the cuttings, and that Cortis took only his cuttings.

Both Cortis and Brown testified that they would leave notes for one another in notebooks. Although the confiscated notebooks did not contain any specific reference to a marijuana growing operation, there are a number of entries in the notebooks demonstrating Cortis' involvement in the operation.

For example, Cortis wrote, "Where's the key to the <u>Room</u>!" (Emphasis in original.) Barker testified that Brown misplaced the key to the padlock which was attached to the growing room door and that the note refers to that incident.

In another entry, Cortis recorded, "Don't put them in grow room until they're sprayed! Hey you, if you can keep these alive there's lots more to come—if they die, that's it! . . . I opened the door, hot as hell in there." The growing room was the room in which the marijuana plants were kept. As there was evidence that the grow light increased the heat in the room, it can reasonably be inferred that the language regarding opening the door refers to the door of the growing room. Another note signed by "Steve" also refers to opening the door to allow heat to escape.

Cortis stated in another note, "Please move shorter plants to center, taller ones to outside!" As the growing marijuana plants were arranged in a circle beneath the grow light, the court could

reasonably have inferred that the reference is to those plants.

There are a number of other notes which refer to the care and maintenance of plants. Although Cortis and Brown raised a number of plants in Brown's house, the trial court, as the finder of fact, could and reasonably did conclude that the references were to the marijuana plants.

A fingerprint examiner supervisor testified that Cortis' fingerprints were found on several pages in the two notebooks and on the grow light. She declared that she was positive in her identification. A handwriting expert employed by the Nebraska State Patrol testified that Cortis made a number of entries in the two notebooks seized from Brown's house.

Cortis worked as a landscaping foreman, installing plant material, putting in edging, and pruning plants. The defendant testified that he had taken a course in plant propagation and had horticultural experience. He worked in a greenhouse while attending school and admitted that he could propagate a marijuana plant from a cutting. Hence, it is plainly evident that Cortis had the knowledge and experience to participate in a marijuana growing operation.

A conspiracy need not be established by direct evidence of acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purposes to be accomplished. *State ex rel. Douglas v. Associated Grocers*, 214 Neb. 79, 332 N.W.2d 690 (1983). Barker's testimony regarding her observations of Cortis' tending to the marijuana plants in Brown's house, the notes between Cortis and Brown making references to the marijuana growing operation, and the physical evidence seized from Brown's residence, together with the reasonable inferences drawn therefrom, are sufficient to show beyond a reasonable doubt that Cortis conspired with Brown to possess with the intent to manufacture marijuana.

Cortis argues that he cannot be convicted of conspiracy because Brown, his sole alleged coconspirator, was acquitted of conspiracy by the same court which convicted him of that charge. As a matter of fact and law, Cortis is mistaken.

Brown was never acquitted of, as she was never charged with, conspiracy. Even if Brown had been so charged and

acquitted, this would not automatically result in a reversal of Cortis' conviction on the conspiracy charge. In *Platt v. State*, 143 Neb. 131, 142-43, 8 N.W.2d 849, 855 (1943), this court held: "It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt." It follows that if a person can be found guilty of conspiracy when his or her sole coconspirator has been acquitted, a person can be found guilty of conspiracy when his or her sole coconspirator has not been charged with conspiracy. There can be any number of reasons for the failure to charge a coconspirator. Cortis has no reason to complain, as the State was still required to prove at his separate trial the existence of a conspiracy between himself and Brown beyond a reasonable doubt.

Based upon Barker's testimony that she observed Cortis tending the marijuana plants; the references in the notebooks to a marijuana growing operation; and the testimony of the law enforcement officers who discovered plastic buckets containing 12 growing marijuana plants arranged beneath a grow light, a timing device to operate the grow light, chemicals used for growing plants, a fan, an incubator for starting immature marijuana plants, and a sprayer, the finder of fact could reasonably infer that Cortis knowingly or intentionally possessed with an intent to manufacture marijuana.

Cortis next asserts that he could not possess the marijuana because he was not renting or living at the house or even on the premises when the contraband was found. However, Brown, who was Cortis' coconspirator, did possess the marijuana. See *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990) (constructive possession of an illegal substance may be proved by direct or circumstantial evidence, and may be shown by the accused's proximity to the substance at the time of arrest or by a showing of dominion over the substance). When a conspiracy has been proved, a conspirator's acts and declarations in furtherance of the conspiracy are the acts and declarations of all conspirators. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). See, also, *U.S. v. Lewis*, 902 F.2d 1176 (5th Cir. 1990)

(accused can be found guilty of possessing cocaine if a coconspirator had possession of the cocaine in furtherance of the conspiracy). As stated, there was sufficient evidence to prove the Brown-Cortis conspiracy beyond a reasonable doubt; therefore, Brown's acts are imputed to Cortis.

Cortis further complains that there was no showing of his intent to manufacture the marijuana. When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence. *Zitterkopf, supra.* A review of the evidence clearly shows that Cortis' criminal intent was proved beyond a reasonable doubt.

Taking the view most favorable to the State, there is sufficient evidence to support the district court's finding that Cortis was guilty beyond a reasonable doubt of the offenses charged. This assignment of error is without merit.

The judgments and sentences of the district court for Dakota County are affirmed.

AFFIRMED.