STATE OF NEBRASKA, APPELLEE, V. MICHAEL ALLEN BODFIELD,
APPELLANT.

421 N.W.2d 794

Filed April 8, 1988.   No. 87-657.

Claude E. Berreckman, Jr., of Berreckman & Berreckman, P.C., for appellant.

Robert M. Spire, Attorney General, and James H. Spears, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK, D. JJ.

GRANT, J.

Defendant, Michael Allen Bodfield, was convicted of burglary by a jury in the district court for Dawson County. After a later hearing, the trial court found defendant to be a habitual criminal, as defined in Neb. Rev. Stat. § 29-2221 (Reissue 1985), and sentenced him to 11 to 20 years in the penal complex. On appeal to this court, defendant assigns three errors: (1) that the court erred in failing to find that the evidence was insufficient to support a conviction of burglary; (2) that the trial court erred by communicating with the jury, through the clerk of the court, in the absence of defendant or his counsel; and (3) that the trial court erred in encouraging the jury to reach a verdict. We affirm.

The record shows that on the morning of October 18, 1986, the owner of the Seventh Street Market in Cozad, Nebraska, reported a burglary at her store. A Cozad Police Department officer met the owner at the front door of the business. The

officer's investigation of the scene showed that an intruder had broken in through a window on the east side of the building and removed several items, apparently through the back door. Items missing from the store included a cash register, some change from a drawer underneath the cash register, and three cases of beer. The change totaled approximately $13. The officer also observed dirt on the floor, which appeared to have fallen out of the bottom of a shoe or boot.

Outside the store, the investigating officer located a footprint in a roughed area of dirt approximately 20 feet from the broken window. He also observed tire tracks that appeared to be from a smaller wheelbased vehicle and that went through the alley which ran beside the store, and then turned to the south.

Upon completing his investigation of the scene, the officer proceeded to a location, at 810 East 4th in Cozad, where he believed there had been a smaller vehicle. He then knocked on the front door, but no one answered. The house had been rented to Joe Barela and was his residence. At this point, the investigation was terminated for the day.

On October 25, 1986, pursuant to a valid search warrant, a Cozad police officer searched the house rented to Barela and found a cash register which the owner of the Seventh Street Market identified as the cash register which had been stolen during the October 18 burglary. The cash register was found in a closet, wrapped in a blanket.

During defendant's trial on March 23, 1987, a witness testified that defendant told her that he, along with Mike Lee, had broken into the Seventh Street Market. Defendant also told the witness that on the day of the burglary, the two men had been drinking all day at Joe Barela's house and ran out of beer. The witness further testified that defendant had told her that the other man broke the window, climbed in, took some beer, and handed it down to defendant.

Also testifying at defendant's trial was a witness who spent time in the cell adjacent to defendant's cell at the Dawson County jail, while defendant awaited trial and this witness was awaiting sentencing on an unrelated crime. This witness testified that he heard defendant tell Mike Lee that "he was

sorry that he didn't want to get anybody else involved when they did the Burglary."

On November 6, 1986, defendant was arrested by the Cozad police on an unrelated matter. During questioning, after the officer had informed defendant of his rights under the *Miranda* decision, the officer noticed defendant was wearing a pair of hiking boots. These boots were confiscated and sent to the State Patrol laboratory in Lincoln. No report from the crime laboratory was submitted into evidence, but the officer testified that the confiscated boots would have made impressions similar to those found outside the window at the Seventh Street Market after the burglary in question.

During further questioning of defendant, defendant denied any knowledge of the burglary in question, but did tell the officer that Joe Barela should have known the cash register in his rented house was stolen. The police officer further testified that he asked defendant about the burglary in question and that "Mr. Bodfield [defendant] said he was out of town during that time and I asked him if he could tell me what date the Burglary occurred on and he said he had no idea."

After the prosecution rested, the defendant did not testify and did not call any witnesses. The jury was sent to deliberate at approximately 1:40 p.m. on March 23, 1987. At approximately 2:45 p.m., the clerk of the district court was directed by the district judge to inform the jury that the Dawson County courthouse had been closed due to a blizzard since approximately 1:30 p.m. and that the jury could either stay in the courthouse and deliberate to a verdict or cease deliberations for the day and return to the courthouse on Wednesday, March 25, 1987, to continue deliberations. At approximately 2:50 p.m. on March 23, the jury returned a verdict of guilty. After the jury was polled, the judge accepted the verdict and entered the verdict of guilty.

With regard to defendant's first assignment of error, concerning the sufficiency of evidence, this court has held that

" '[i]t is not the province of this court to resolve conflicts in the evidence, pass on credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be

sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. . . .' "
*State v. Babcock*, 227 Neb. 649, 651, 419 N.W.2d 527, 529 (1988); *State v. Patrick*, 227 Neb. 498, 418 N.W.2d 253 (1988).

During defendant's trial, the jury had an opportunity to hear the witnesses testify and to pass on their credibility. The jury heard two separate witnesses testify that they had heard defendant admit that he had committed the burglary. The jury also heard a police officer testify that he found the stolen cash register in defendant's friend's house and that defendant had told the officer that he (the defendant) was out of town at the time of the burglary, although he did not know when the burglary occurred. The officer also testified that defendant wore boots which left marks similar to those at the scene of the burglary.

Although much of the evidence adduced at defendant's trial is circumstantial, we held in *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987), that one accused of a crime may be convicted on the basis of circumstantial evidence if, viewed as a whole, the evidence establishes the guilt of the defendant beyond a reasonable doubt.

Viewing the evidence in the light most favorable to the State, we hold that the evidence is sufficient to establish defendant's guilt.

Defendant next assigns as error that the trial court committed prejudicial error by communicating with the jury in the absence of and without notice to defendant and his counsel. The clerk of the district court's affidavit, which was admitted into evidence during a hearing on a motion for new trial, clearly sets out the clerk's communication with the jury. The court informed the jurors of the inclement weather and gave them the option of either continuing with their deliberations or ceasing their deliberations for the day and continuing on March 25, 1987.

During the hearing on the motion for new trial, the district judge stated:

> As far as the communication with the jury, my recollection is that defendant's attorney, who obviously is not present counsel, was present, and the jury was simply

informed of the situation, due to the situation with the courthouse being closed. And there is no evidence this affected their deliberations in any way, shape or form.

Defendant's point on this assignment of error is that there was a communication with the jury in the absence of defendant or his counsel. At the hearing on defendant's motion for new trial, the court stated counsel was present when the clerk was sent to talk to the jury. There is no evidence or argument presented or even suggested to the contrary. This assignment of error is without merit.

There clearly was a communication to the jury, and defendant's third assignment raised the question whether the communication was inappropriate in that it encouraged the jury to reach a verdict. In *Brockman v. State*, 163 Neb. 171, 79 N.W.2d 9 (1956), this court had a similar communication to the jury before it. In that case, the communication involved an inquiry as to "whether or not the jurors desired to continue their deliberation or, due to the lack of facilities to accommodate the jury overnight, to go to a hotel for the night and further deliberate the next day." *Id*. at 182, 79 N.W.2d at 15. The jurors retired to the jury room and continued their deliberations, eventually reaching a verdict of guilty without further contentions. In that case, we observed:

> The court was not asking for information, and gave no directions nor any urging to do or not to do any particular thing. Insofar as proceedings in the instant case are concerned, there is no indication that the statement made by the trial court could amount to coercion or any attempt to influence the verdict of the jury.

*Id*.

A comparable type of communication was present in the instant case. The clerk of the court, under instruction from the judge, informed the jurors of the weather and advised them of their options. This communication was not an instruction on the substantive issues of the case, nor was it an attempt to coerce or accelerate deliberation to a verdict, such as the instruction in *State v. Garza*, 185 Neb. 445, 176 N.W.2d 664 (1970). We recognize the principle that a trial judge must not coerce a verdict or intimidate a jury, but the communication in this case

does not rise to the level of coercion or intimidation.

The communication was not an instruction giving the jury any standards to use in deciding the case. The case of *State v. White*, 191 Neb. 772, 217 N.W.2d 916 (1974), cited by defendant, is inapplicable to the facts of this case. In *White*, the court instructed the jury as to an issue that was before the jury. This court held that the giving of a supplementary instruction in the absence of defendant and his attorney was error. We characterize the type of communication in the case before us as a housekeeping action and hold that the communication to the jury in this case was not an attempt to encourage or coerce a verdict and was not prejudicial error.

The verdict and sentence are affirmed.

AFFIRMED.