STATE OF NEBRASKA, APPELLEE, V. RICHARD W. WILLETT, APPELLANT.

444 N.W.2d 672

Filed August 25, 1989.  No. 88-853.

Willis G. Yoesel for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Richard W. Willett was charged with threatening "to commit a crime of violence with the intent to terrorize [his wife] Jill Lee Willett by stating he was going to kill her," that is, a violation of Neb. Rev. Stat. § 28-311.01 (Cum. Supp. 1988), which provides: "(1) A person commits terroristic threats if he or she threatens to commit any crime of violence: (a) With the intent to terrorize another; (b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation . . . ." "Terroristic threats," described in § 28-311.01(1), is a Class IV felony, see § 28-311.01(2), which has no minimum prescribed penalty, but which is punishable by a maximum sentence of 5 years, a $10,000 fine, or both such imprisonment and fine. See Neb. Rev. Stat. § 28-105(1) (Reissue 1985). A jury found Willett guilty of the charge. On September 22, 1988, the district court for Richardson County sentenced Willett to imprisonment for 5 years. Willett appeals, contending that (1) his conviction is void because his conduct does not come within the purview of § 28-311.01; (2) the evidence is insufficient to sustain his conviction; and (3) the sentence imposed is excessive.

Starting at 11 a.m. on February 21, 1988, Richard Willett, who was cutting wood with a friend, began drinking alcoholic beverages. By 5 p.m. that day, Willett had consumed in excess of 12 cans of beer and an unidentified quantity of other alcoholic beverage. Sometime in the evening of February 21, Jill Willett, assuming and fearing that her husband would return home drunk and commence a quarrel, decided to go to her mother's (Betty Lee's) house and took her 8-year-old daughter, Megan Lee, and her 6-month-old son, William Lee Willett, with her.

Around 3 a.m. on February 22, 1988, Richard Willett, after a full day and evening of drinking alcohol and having become intoxicated, returned to his home and discovered that Jill and the children were gone. Richard Willett then placed a telephone call to Betty Lee's house and spoke with Lee, who told him not to come to her house for his son, or she would call the police. Lee hung up the phone and then called the police.

Richard Willett went to Lee's house and was "beatin' " on

the locked doors when the police arrived. The police briefly spoke with Willett, who told the police that he wanted to take his son home. The police escorted Willett from Lee's premises and returned to Lee's house, where Jill Willett told the officers that she was afraid that the intoxicated Richard Willett would injure her.

While the police were at the Lee residence, Richard Willett again phoned and spoke with Jill Willett while Officer Marty Eickhoff was listening to the conversation on another phone at Lee's. In this conversation, Willett demanded that Jill return his son or Willett would "hunt her down and kill her." Richard Willett also told Jill not to send police to their residence because, if she did, "somebody was going to get killed." During that telephone conversation, both Eickhoff and Jill Willett heard a "clicking" noise in the background at the other end of the line, which they identified as the pumping action of a shotgun. Jill was not afraid that Richard Willett would kill her, but was frightened by his threats of violence.

Police then proceeded to the Willetts' apartment and waited outside. Willett came out of the apartment and started to walk to his car. Officers approached Willett and arrested him. In a subsequent search of the Willetts' apartment, police discovered a pump-action shotgun on the kitchen table near the telephone. Four live shotgun shells were in the gun's magazine. Willett testified that in reference to his telephonic statements to Jill Willett, including his comment that he would "hunt her down and kill her," it was "possible" that he intended to intimidate Jill Willett to return their son, William, to the Willett residence.

In addition to instructing on "terroristic threats," § 28-311.01, the court also gave an instruction on the offense of "intimidation by phone call," a violation of Neb. Rev. Stat. § 28-1310 (Reissue 1985), which provides:

(1) A person commits the offense of intimidation by phone call if with intent to terrify, intimidate, threaten, harass, annoy, or offend, he:

. . . .

(c) Telephones another and threatens to inflict injury to any person or to the property of any person;

. . . .

(4) Intimidation by phone call is a Class III misdemeanor.

Richard Willett did not object to the instructions given. The jury found Willett guilty of "terroristic threats" (§ 28-311.01). After Richard Willett was evaluated at the diagnostic and evaluation center and a presentence report was submitted on Willett, the court found that Willett was not a suitable candidate for probation and sentenced him to 5 years' imprisonment.

Richard Willett does not challenge the validity of § 28-311.01, but, rather, argues that the evidence does not support his conviction because the statute was intended to be a deterrent to bomb threats and was not intended to apply to the conduct on which his conviction is based. Willett contends that he may have violated § 28-1310, the statutory proscription against "intimidation by phone call," and even suggests that the court may have committed reversible error by "failure to direct a possible verdict of guilty under Section 28-1310." Brief for appellant at 11. Willett's contention about a directed verdict of a defendant's guilt is, to say the least, novel in the annals of American jurisprudence.

Willett's argument concerning the charge against him ignores the unequivocal language of § 28-311.01(1)(a), which provides that a person violates the statute by threatening to commit a crime of violence with the intent to cause terror in another. Without doubt, a threat of murder is a threat to commit a "crime of violence." While § 28-311.01(1)(b) applies to conduct such as a bomb threat, § 28-311.01(1)(a) applies to any threatened commission of a violent crime for the purpose of causing terror to another. Therefore, when a person threatens to commit a crime of violence and has the intent to terrorize another as the result of the threat, he or she violates § 28-311.01(1)(a).

To charge a defendant with the commission of a criminal offense, an information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime or in language equivalent to the statutory terms defining the crime charged. *State v. Golgert*, 223 Neb. 950, 395

N.W.2d 520 (1986).

The fact that Willett's conduct may have also contravened § 28-1310 is not a ground for reversing his conviction. When more than one statute prohibits criminal conduct, a prosecutor may select any violated statute as the basis for prosecuting a defendant so long as the prosecutor's selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987). See, also, *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986). Willett has not alleged that the prosecutor relied on any "unjustifiable standard" in deciding to charge Willett with a violation of § 28-311.01.

There is no merit in Willett's assigned error concerning the charge against him.

Next, Willett contends that the State failed to prove his requisite intent to terrorize Jill Willett. In his testimony, Willett acknowledged that by his threat to Jill Willett, namely, he would "hunt her down and kill her," it was "possible" that he intended to intimidate Jill into returning the boy, William, to the Willett residence. "When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman*, 227 Neb. 131, 140, 416 N.W.2d 231, 237 (1987).

> In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987).

> On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*State v. Robertson*, 223 Neb. 825, 830, 394 N.W.2d 635, 638 (1986).

The evidence supports the jury's factual conclusion that Richard Willett intended to terrorize Jill Willett for the purpose of her bringing William to the Willett residence. There is no merit in Richard Willett's assignment of error concerning sufficiency of evidence to sustain his conviction.

Willett also contends that the district court imposed an excessive sentence. "[I]n the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal." *State v. Dillon*, 222 Neb. 131, 136, 382 N.W.2d 353, 357 (1986). See, also, *State v. Ladehoff*, 229 Neb. 111, 425 N.W.2d 352 (1988); *State v. Hoffman, supra; State v. Brown, supra.* The presentence report on Willett shows an extensive history of criminal violations, including Willett's convictions for criminal mischief, trespass, resisting arrest, and third degree assault, the last offense and conviction having occurred within the few months preceding the offense and conviction in the present case. Furthermore, we note that the sentence imposed did not contain or specify a minimum sentence to be served. See Neb. Rev. Stat. § 83-1,110(1) (Reissue 1987) (minimum term; eligibility for release on parole). We conclude that the district court did not abuse its discretion in the sentence imposed on Willett.

Therefore, Willett's conviction and sentence are affirmed.

AFFIRMED.