761 N.W.2d 536 (2009)
277 Neb. 182
STATE of Nebraska, appellee,
v.
Elmore HUDSON, Jr., appellant.
No. S-08-151.
Supreme Court of Nebraska.
February 20, 2009.
*538 Brian S. Munnelly for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
This is an appeal by Elmore Hudson, Jr., from the denial of his motion for postconviction relief. The primary issue presented on appeal is whether Hudson was deprived of effective assistance of counsel when his trial counsel failed to make a motion for mistrial based on an allegedly improper communication between the judge and jury. We conclude that counsel's failure to move for a mistrial was not prejudicial and, therefore, affirm the judgment of the district court.

FACTS
Hudson's criminal trial for first degree murder and attempted second degree murder began on September 30, 2002. Closing arguments took place during the morning of October 8. In the afternoon, instructions were read and the jury adjourned to deliberate. The following morning, the jury submitted three written questions to the court: "1. What happens if it is a hung jury? 2. Can a spouse be required to testify *539 against a spouse? 3. Can we read or have copies of statements (police report)?" The court responded, "1. Cannot comment. 2. Cannot comment. 3. In addition to live testimony you have been given all of the evidence upon which you have to decide the case." At 2 p.m. the same day, the jury submitted a fourth question which asked, "[D]o we all have to vote not guilty of 1st degree murder before moving to second degree? Or can some of us be undecided and move to the lesser degree?" At 2:35 p.m., the court responded, "Refer to the instructions. Remember, your final verdict on each count must be unanimous."
After the jury informed the court that it had reached a verdict, late in the afternoon of October 9, 2002, but before the verdict was announced, Hudson's trial counsel inquired about a communication that had occurred between the trial court and jury outside of his presence:
[Hudson's counsel]: And the only other thing was, apparently, someone in passing suggested to your bailiff or inquired as to how long they had to deliberate or how long they were supposed to deliberate, and at some point the bailiff contacted the Court and went back and told them basically you deliberate as long as the case lasted; is that my understanding?
THE COURT: Well, what happened is the first questions that were posed by the jury included a question about what happens if the jury is hung, which I told you my comment was, I can't comment on that. When that question was delivered by my bailiff, [the jurors] wondered how long if they were  they would have to deliberate if they couldn't reach a verdict, and I just told [the bailiff] that a rule of thumb is generally at least the length of time of the trial, but that's not necessarily the hard and fast rule. So that's what that is about.
[Hudson's counsel]: And I don't think that question was in writing, and that's the only reason I wanted to  that's all I wanted to make a record of. That's it.
THE COURT: No, it wasn't. So that did occur.
At the evidentiary hearing on his motion for postconviction relief, Hudson submitted two exhibits. First he offered the deposition of the trial court's bailiff. After reviewing the bill of exceptions, the bailiff stated she recalled being asked the question about the length of deliberations; she testified, "I  informally ... went and asked the judge, [stating that the jurors] want to know how long they have to deliberate. And he said, well, generally it's  it can be as long as the trial lasted. And so I must have gone back and repeated that answer to the jurors." The bailiff also stated that it would have been inappropriate for her to answer the question regarding the length of deliberations because it was not a standard administrative question. The bailiff testified that she felt the question needed to be answered by the trial judge.
The deposition of Hudson's trial counsel was also submitted, and he testified regarding the alleged improper communication:
At some point [in] the day the jury announced its verdict, [and] I was advised by the judge's bailiff ... that one of the members of the jury upon returning from lunch had inquired as to how long the jury would be required to deliberate. She indicated to me that she told the juror that she would then go and ask the judge in response to that question.
She then went and asked the judge, who indicated or who directed [the bailiff] to tell [the jurors] something along the lines of they have to deliberate generally *540 as long as it took to try the case. I think I found this  that this  so she went and did that. She went and told the jury or that juror who asked the question that answer.
I don't think I found that out until the jury had actually reached its verdict and I had come over from my office....
The verdict was rendered at 4:37 p.m. on October 9, 2002. Hudson was convicted of first degree murder, attempted second degree murder, and two counts of use of a deadly weapon to commit a felony. On October 21, Hudson moved for a new trial through his trial counsel. Hudson sought a new trial based, in part, on the allegedly improper and prejudicial communication between the court and the jury regarding the possible length of deliberations. The court found that the communication did not prejudice Hudson and overruled the motion for a new trial.
Hudson's trial counsel represented him on direct appeal. Among other issues raised, Hudson claimed that the district court erred in denying his motion for a new trial based upon an alleged improper communication between the trial judge and jury concerning the length of time for deliberations. We affirmed the conviction on direct appeal, rejecting Hudson's judicial misconduct claim because Hudson's trial counsel failed to move for a mistrial before the verdict was announced.[1]
Following our resolution of the direct appeal, Hudson filed a pro se motion for postconviction relief in the district court. In his motion, Hudson alleged, among other things, improper communication between the trial judge and the jury. Without stating its reasons or conducting an evidentiary hearing, the district court denied Hudson's claims for postconviction relief. On appeal, we noted that Hudson's claim was not procedurally barred because Hudson was represented by the same attorney at trial and on direct appeal.[2] We determined that the district court erred in denying Hudson's claim for postconviction relief without an evidentiary hearing. We reversed, and remanded the cause with directions to hold an evidentiary hearing on ineffective assistance of counsel.[3]
After the evidentiary hearing, the district court granted Hudson's motion for postconviction relief with respect to the manner in which the trial court awarded credit for time served at his sentencing, and that subject is not at issue in this appeal. The district court overruled the motion, however, as to all other grounds. Hudson appeals.

ASSIGNMENTS OF ERROR
Hudson assigns that the district court erred in determining that the trial court's communication to the jury was not prejudicial to the extent that Hudson was denied a fair trial and that therefore, trial counsel was ineffective in failing to file a motion for mistrial so as to preserve the issue for appeal.

STANDARD OF REVIEW
A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[4] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear *541 error.[5] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[6] an appellate court reviews such legal determinations independently of the lower court's decision.[7]

ANALYSIS
Hudson asserts that the district court erred in denying his ineffective assistance of counsel claim. Hudson argues that trial counsel should have filed a motion for mistrial based on an improper and prejudicial ex parte communication between the judge and jury. We conclude that the district court did not err in denying Hudson's motion for postconviction relief alleging ineffective assistance of counsel, because the ex parte communication was not prejudicial, and therefore, a motion for mistrial would not have affected the outcome of this case.
An ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[8] We have explained that to prevail on a claim of ineffective assistance of counsel under Strickland v. Washington,[9] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[10] The two-prong test for an ineffective assistance of counsel claim need not be addressed in order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[11] The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.[12]
Following Hudson's conviction, trial counsel failed to make a motion for mistrial after being informed of an ex parte communication between the trial court and the jury. Assuming, without deciding, that trial counsel's failure to move for a mistrial was deficient, we examine the second prong of the Strickland test, whether such inaction prejudiced Hudson. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[13] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[14] Thus, Hudson can only show prejudice if a motion for mistrial based on the ex parte communication would have been successful.
In the case at hand, an ex parte communication took place at the direction of the trial court between the bailiff and the *542 jury. As pertinent, Neb.Rev.Stat. § 25-1116 (Reissue 2008) provides:
After the jur[ors] have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel.
We have stated that if it becomes necessary to give further instructions to the jury during deliberations, the proper practice is to call the jury into open court and to give any additional instructions in writing in the presence of the parties or their counsel.[15] Clearly, that procedure was not followed in this case, although it should have been. But that does not mean that a motion for mistrial based on the trial court's error would have been properly granted.
We have reviewed ex parte communications on several other occasions. In State v. Bodfield,[16] we recognized the principle that a trial judge must not coerce a verdict or intimidate a jury. In that case, at the trial judge's direction, the clerk of the court informed the jurors, ex parte, of inclement weather and gave jurors the option of continuing deliberations or returning 2 days later. We determined that that communication was neither an instruction on the substantive issues of the case nor an attempt to coerce or accelerate deliberations to a verdict. We concluded that the communication did not rise to the level of coercion or intimidation.[17]
In State v. Thomas,[18] we again addressed an ex parte communication between the judge and jury. In Thomas, on the second day of deliberations, the jury foreman sent a note to the trial judge stating that the jury was deadlocked. Outside the presence of the parties or their counsel, the trial judge told the jury to continue deliberating because it was too soon to abandon the effort to reach a verdict. On appeal, we determined that the communication between the trial court and the jury merely directed the jury to continue its deliberations. We concluded that the direction did not have a tendency to influence the verdict.[19]
And recently, in State v. Floyd,[20] we addressed an ex parte communication between a bailiff and jury. In Floyd, we determined that a bailiff's ex parte communications to a jury regarding the potential length of deliberations went beyond simple administrative matters and, thus, resulted in misconduct.[21] We concluded that the bailiff's improper communication with jurors, in which the bailiff stated that the jurors would be required to deliberate the rest of the week, prejudiced the defendant and denied him a fair trial.
Hudson likens this case to Floyd, arguing that the ex parte communication was prejudicial. Hudson's reliance on Floyd, *543 however, is misplaced because Floyd is distinguishable in two significant ways. First, in Floyd, the bailiff alone was responsible for the improper communications with the jury. Here, the bailiff referred the juror's question regarding the length of deliberations to the judge and merely repeated the judge's response. Second, the communication in Floyd was coercive and prejudicial. In Floyd, the jury was ordered to return to deliberations after it was determined that the jury's verdicts were not unanimous. The communication was made to the juror who was known to be the lone dissenting juror. Either directly or indirectly, the communication focused on the potential effect that the juror's continued dissent would have on the length of deliberations.
In this case, however, the communication to the jury was not coercive and would not have pressured the average juror during deliberations. Although the trial court suggested a time limit for jury deliberations, there is nothing in the court's remarks suggesting that the jury could not take all of the time it needed in reaching a verdict. And nothing in the court's communication expressed its views concerning the facts, or the guilt or innocence of Hudson. It is not clear from the record that at the time of the communication, the jurors were unable to agree upon a verdict. And the jury deliberated for an additional 4 to 5 hours after the communication.
Taken as a whole, the record shows that although the communication was improper, trial counsel's failure to move for a mistrial was not prejudicial. Hudson has not demonstrated that the communication was improper to the extent necessary to have warranted the granting of a mistrial.
Hudson also relies on State v. Mahlin[22] for the proposition that a new trial is required if the record does not affirmatively show that an ex parte communication had no tendency to influence the verdict. While Mahlin correctly states the rule governing communication between a trial court and jurors, Mahlin, as a direct appeal, required a different burden of proof. As we explained above, to prevail on a claim of ineffective assistance of counsel in this case, Hudson must show that counsel's performance was deficient and that this deficient performance actually prejudiced his defense.[23] Hudson has failed to do so.
Despite his assertions to the contrary, Hudson has not shown that he was prejudiced in the defense of his case by trial counsel's failure to move for a mistrial. And because Hudson failed to establish he was prejudiced, we do not need to address whether his trial counsel's performance was deficient.[24]

CONCLUSION
Although communication between the trial judge and jurors should always take place with the parties and their counsel present (unless waived), the record before us does not affirmatively show that the communication in this case warranted a mistrial. Thus, Hudson failed to meet his burden of proving that he was prejudiced by alleged ineffective assistance of counsel. The judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] State v. Hudson, 268 Neb. 151, 680 N.W.2d 603 (2004).
[2] State v. Hudson, 270 Neb. 752, 708 N.W.2d 602 (2005).
[3] Id.
[4] State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008).
[5] State v. Moyer, 271 Neb. 776, 715 N.W.2d 565 (2006).
[6] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[7] Moyer, supra note 5.
[8] State v. Miner, 273 Neb. 837, 733 N.W.2d 891 (2007).
[9] Strickland, supra note 6.
[10] Moyer, supra note 5; State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[11] State v. Williams, 259 Neb. 234, 609 N.W.2d 313 (2000); State v. Smith, 256 Neb. 705, 592 N.W.2d 143 (1999).
[12] State v. McDermott, 267 Neb. 761, 677 N.W.2d 156 (2004).
[13] State v. Benzel, 269 Neb. 1, 689 N.W.2d 852 (2004).
[14] Miner, supra note 8.
[15] State v. Jackson, 264 Neb. 420, 648 N.W.2d 282 (2002).
[16] State v. Bodfield, 228 Neb. 205, 421 N.W.2d 794 (1988).
[17] Id.
[18] State v. Thomas, 262 Neb. 985, 637 N.W.2d 632 (2002).
[19] Id.
[20] State v. Floyd, 272 Neb. 898, 725 N.W.2d 817 (2007), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[21] Id.
[22] State v. Mahlin, 236 Neb. 818, 464 N.W.2d 312 (1991).
[23] Moyer, supra note 5; Molina, supra note 10.
[24] See State v. Boppre, 252 Neb. 935, 567 N.W.2d 149 (1997), disapproved on other grounds, State v. Silvers, 255 Neb. 702, 587 N.W.2d 325 (1998).